UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| P.H., by her guardian ad litem JUANITA LUNA,<br><br>Plaintiff,<br><br>v.<br><br>TEHACHAPI UNIFIED SCHOOL DISTRICT, KATHLEEN QUIJADA, and DOES 1–100, inclusive,<br><br>Defendants. | No. 1:17-cv-00257-DAD-JLT<br><br>ORDER DENYING MOTION TO DISMISS AND APPOINTING GUARDIAN *AD LITEM*<br><br>(Doc. Nos. 2, 6) |

On February 22, 2017, plaintiff P.H., a minor, commenced this action by filing a complaint against Kathleen Quijada and the Tehachapi Unified School District ("Tehachapi") bringing claims for 1) a violation of the American Disabilities Act ("ADA"), 28 C.F.R. Part 35; 2) a violation of the Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq.*; 3) a violation of the Rehabilitation Act, 28 U.S.C. § 794 (§ 504); 4) breach of due of care arising under a special relationship; 5) negligence; 6) assault; 7) battery; and 8) intentional infliction of emotional district. (Doc. No. 1.) On the same day, plaintiff P.H.'s mother filed a motion for order appointing her guardian *ad litem* for P.H. (Doc. No. 2.) On March 16, 2017, defendant Tehachapi filed a motion to dismiss plaintiff's first and third claim for relief under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Doc. No. 6.) On April 3, 2017 plaintiff P.H. filed an

1

opposition to the motion to dismiss and on April 10, 2017, defendant Tehachapi filed a reply. (Doc. Nos. 9 and 10.) The motion for order appointing guardian *ad litem* is unopposed. The matters came before the court for hearing on April 18, 2017. Attorney Anthony DeMaria appeared telephonically on behalf of defendant Tehachapi and attorney David Grey appeared telephonically on behalf of plaintiff. (Doc. No. 12.) The matters were taken under submission. For the reasons that follow the court will appoint Juanita Luna as P.H.'s guardian *ad litem* and will deny defendant Tehachapi's motion to dismiss.

## Background

Plaintiff P.H. is a seven-year old girl who suffers from multiple severe disabilities, is non-verbal, and has limited intellectual capacity. (Doc. No. 2 at 3.) P.H. was a student at Tehachapi where she alleges she was tied to a chair with a blanket and left for entire school days. (Doc. No. 1 at 2.) Plaintiff further alleges she was bruised, battered, screamed at, and left all day in soiled papers. (*Id*.) In sum, plaintiff claims that she was physically and psychologically abused because of her disability from March 2016 through May 2016. (*Id*.) Her biological mother and legal custodian is Juanita Luna. (Doc. No. 2 at 3.) As noted, Ms. Luna has moved for an order appointing herself as guardian *ad litem* for P.H. (Doc. No. 2.)

As also noted, defendant Tehachapi moves to dismiss plaintiff's first and third claims brought under the ADA and the Rehabilitation Act, respectively, arguing that plaintiff has failed to allege that she exhausted her administrative remedies with respect to those claims. (Doc. No. 6 at 1–2.) Tehachapi contends that the Individuals with Disabilities Education Act ("IDEA") requires exhaustion of plaintiff's first and third claims for relief before plaintiff can seek federal court intervention. (*Id*. at 5.) Plaintiff opposes dismissal of those claims, arguing that exhaustion is not required because her first and third claims are personal injury damages claims and are independent of the relief available under the IDEA for denial of free appropriate public education ("FAPE"). (Doc. No. 98 at 1) (citing *Fry v. Napolean Community Schools*, 580 U.S. __, 137 S. Ct. 743, 749 (2017) ("We hold that exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee – what the Act calls a 'free appropriate public education.'")).

2

Below, the court will first address the motion for appointment of a guardian *ad litem* before turning to defendant's motion to dismiss.

## Guardian *Ad Litem*

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). Rule 17 provides that "[t]he court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2). Local Rule 202(a) of this court states, in pertinent part:

> Upon commencement of an action or upon initial appearance in defense of an action by or on behalf of a minor . . . the attorney representing the minor or incompetent person shall present . . . a motion for the appointment of a guardian ad litem by the Court, or . . . a showing satisfactory to the Court that no such appointment is necessary to ensure adequate representation of the minor or incompetent person. *See* Fed. R. Civ. P. 17(c).

The decision to appoint a guardian ad litem "must normally be left to the sound discretion of the trial court." *United States v. 30.64 Acres of Land*, 795 F.2d 796, 804 (9th Cir. 1986).

Juanita Luna moves the court to appoint her as guardian *ad litem* to her daughter P.H. (Doc. No. 2.) In a declaration signed under penalty of perjury, Ms. Luna states that P.H. is her natural born child and that she has legal custody over her. (*Id*. at 3.) Ms. Luna further declares that she has no interest adverse to the rights of P.H. and that she is fully competent and responsible to prosecute the action on her daughter's behalf. (*Id*.) Finding good cause, the court grants the motion (Doc. No. 2) and appoints Juanita Luna as the guardian *ad litem* of P.H., a minor and the named plaintiff in this action.

## Motion to Dismiss

*A. Rule 12(b)(6) Legal Standard*

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

*B. Section 1415(l) Legal Standard*

Under 20 U.S.C. § 1415(*l* ), "a plaintiff bringing suit under the ADA, the Rehabilitation Act, or similar laws must in certain circumstances—that is, when 'seeking relief that is also available under' the IDEA—first exhaust the IDEA's administrative procedures." *Fry*, 137 S. Ct. at 750. As the Supreme Court has explained:

> § 1415(*l* )'s exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education. If a lawsuit charges such a denial, the plaintiff cannot escape § 1415(*l* ) merely by bringing her suit under a statute other than the IDEA. . . . But if, in a suit brought under a different statute, the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required.
>
> * * *
>
> But that examination should consider substance, not surface. The use (or non-use) of particular labels and terms is not what matters. . . . [§ 1415(*l* )] requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way.
>
> * * *
>
> In addressing whether a complaint fits that description, a court should attend to the diverse means and ends of the statutes covering persons with disabilities—the IDEA on the one hand, the ADA and

4

> Rehabilitation Act (most notably) on the other. The IDEA, of course, protects only 'children' (well, really, adolescents too) and concerns only their schooling. § 1412(a)(1)(A). And as earlier noted, the statute's goal is to provide each child with meaningful access to education by offering individualized instruction and related services appropriate to her 'unique needs.' § 1401(29); *see Rowley*, 458 U.S. at 192; *supra*, at 753 – 754. By contrast, Title II of the ADA and § 504 of the Rehabilitation Act cover people with disabilities of all ages, and do so both inside and outside schools. And those statutes aim to root out disability-based discrimination, enabling each covered person (sometimes by means of reasonable accommodations) to participate equally to all others in public facilities and federally funded programs. *See supra*, at 749 – 750. In short, the IDEA guarantees individually tailored educational services, while Title II and § 504 promise non-discriminatory access to public institutions.
>
> * * *
>
> "One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject. . . But when the answer is no, then the complaint probably does concern a FAPE."

*Fry*, 137 S. Ct. at 754-56.

*C. Analysis*

Here, plaintiff's complaint specifically states that she "seeks monetary damages for personal injuries suffered by P.H. and does not assert any claims under the Individuals with Disabilities Education Act (IDEA) nor does she request any relief that is also available under the IDEA." (Doc. No. 1 at 5.) Defendant Tehachapi argues that plaintiff's first and third claims are in actuality based upon FAPE. (Doc. No. 10 at 3–5.) For instance, defendant contends, the first claim states "Defendants were aware that P.H. had federally protected rights to be integrated with general education children at school and to be provided with reasonable modifications and to be free from the physical and emotional abuse described herein." (Doc. No. 1 at 8.) Similarly, according to defendant, plaintiff's third claim asserts that defendant denied plaintiff "the benefits of receiving full and equal access to the public education programs and activities and

discriminating against her because of her disability." (*Id.* at 11.)

The claims presented by plaintiff here are, however, premised on equal access and not the adequacy of the special education services. In *Fry*, for instance, school officials refused to allow a trained service dog to assist the plaintiff, who had a severe form of cerebral palsy, at school. 137 S. Ct. at 750–51. In response, the parents removed the plaintiff from the school and homeschooled her. *Id.* at 751. The complaint "alleged that the school districts violated Title II of the ADA and § 504 of the Rehabilitation Act by 'denying [plaintiff] equal access' to [her school] and its programs, 'refus[ing] to reasonably accommodate' [plaintiff]'s use of a service animal, and otherwise 'discriminat[ing] against [plaintiff] as a person with disabilities.'" *Id.* at 752. Under these circumstances the Supreme Court in *Fry* concluded that the "complaint alleges only disability-based discrimination, without making any reference to the adequacy of the special education services [plaintiff's] school provided. . . . The [plaintiff's family] instead maintained . . . that the school districts infringed [plaintiff's] right to equal access—even if their actions complied in full with the IDEA's requirement." 137 S. Ct. at 758.

The same type of equal access claim alleged in *Fry* is being alleged by plaintiff here. Indeed, the complaint alleges that defendants isolated P.H. from other school children during the school day, resulting in the denial of school programs and services, and physically and psychologically abused her because of her disability. (*See, e.g.,* Doc. No. 1 at 2.) The complaint does not allege that defendants provided inadequate special education services or failed to provide sufficient supportive services for plaintiff's disability. (*Id.*) *Compare K.G. by & through Gosch v. Sergeant Bluff-Luton Cmty. Sch. Dist.*, No. C 15-4242-MWB, 2017 WL 1098829, at *11–13 (N.D. Iowa Mar. 23, 2017) (concluding that denial of a FAPE was not the gravamen of the complaint even where plaintiffs initially pursued the administrative process under the IDEA because the complaint's allegations identifying the parties in terms of needing or supplying "special education services" and having a duty to ensure "equal access to a public education" were not about the denial of a FAPE but instead showed notice to defendants of the conditions that put the plaintiff at risk when defendants allegedly used unlawful and unreasonable force against him); *with J.M. v. Francis Howell School District*, 850 F.3d 944, 949 (8th Cir. 2017)

(concluding denial of a FAPE was the gravamen of the complaint where the complaint originally contained claims under the IDEA and it was alleged in the operative complaint that the use of isolation and physical restraints failed to provide proper "sufficient 'supportive services' to permit [J.M.] to benefit from . . . instruction," and ultimately "denied [J.M.] . . . the benefits of public education."); *L.D. v. Los Angeles Unified Sch. Dist.*, No. 16-cv-8588-MWF-MRW, 2017 WL 1520417, at *2 (C.D. Cal. Apr. 26, 2017) (concluding plaintiff's complaint was really seeking relief under the IDEA because it alleged that the "level of behavior support" had been inadequate and that defendant failed to address the parents' concerns regarding plaintiff's behavioral issues in his IEP meeting).

Moreover, there is nothing in history of this action that suggests any implicit focus on the adequacy of plaintiff's education. *See Fry*, 137 S. Ct. at 758 ("a plaintiff's initial pursuit of the IDEA's administrative remedies can serve as evidence that the gravamen of her later suit is the denial of a FAPE, even though that does not appear on the face of her complaint."). Accordingly, the court concludes that the gravamen of plaintiff's complaint is not an alleged failure to provide a FAPE and the exhaustion of the IDEA's administrative procedures is therefore not required. *See Fry*, 137 S. Ct at 755.

For all of the reasons set forth above:

1) The motion for order appointing guardian *ad litem* (Doc. No. 2) is granted;
2) Juanita Luna is appointed guardian *ad litem* for plaintiff P.H.; and
3) Defendant Tehachapi Unified School District's motion to dismiss (Doc. No. 6) is denied.

IT IS SO ORDERED.

Dated: **June 8, 2017**

UNITED STATES DISTRICT JUDGE

7